UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDON SCHIEFEL #495212,

      Plaintiff,

                                NO. 1:22-cv-1216

v

                                MAG. PHILLIP J. GREEN

C/O EVAN BARTON, *et al.*,

      Defendants.

_____

| | |
|---|---|
| Brandon Schiefel #495212<br>*In Pro Per*<br>Bellamy Creek Correctional Facility<br>1727 W Bluewater Hwy<br>Ionia, MI 48846<br>*Current address per OTIS* | James E. Keathley (P77488)<br>Assistant Attorney General<br>Attorney for MDOC Defendant Barton<br>Michigan Dept of Attorney General<br>Corrections Division<br>P.O. Box 30217<br>Lansing, MI  48909<br>(517) 335-3055 |

_____/

**DEFENDANT'S BRIEF IN SUPPORT OF HIS
MOTION FOR SUMMARY JUDGMENT**

**CONCISE STATEMENT OF ISSUES PRESENTED**

1.  To state a claim for failure to protect under the Eighth Amendment, a plaintiff must show that a government official was "deliberately indifferent to a serious need." Where Plaintiff cannot establish that Defendant knowingly disregarded any alleged risk and Defendant responded reasonably to any perceived risk, is Defendant entitled to summary judgment?

2.  The Eighth Amendment's prohibition against Cruel and Unusual Punishment for excessive force prohibits the unnecessary and wanton infliction of pain. Where Defendant's force was applied in a good-faith effort to restore discipline, is Defendant entitled to summary judgment?

3.  MDOC Policy Directives do not inherently create a protected liberty or property interest under state law, and therefore do not create a cognizable state law claim. Where Plaintiff's state law claim is predicated only in an alleged violation of an MDOC Policy directed, should this claim be dismissed?

4.  Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Where Defendant does not violate any clearly established statutory or constitutional right, is Defendant entitled to summary judgment?

**CONTROLLING OR MOST APPROPRIATE AUTHORITY**

1.  <u>Eighth Amendment –Failure to Protect:</u> In the context of a failure to protect claim, an Eighth Amendment violation occurs only if the government official was "deliberately indifferent to a serious need." *Farmer v. Brennan*, 511 U.S. 825 (1994); *Wilson v. Seiter,* 501 U.S. 294 (1991); *Estelle v. Gamble*, 429 U.S. 97 (1976).

2.  <u>Excessive Force:</u> The Eighth Amendment's proscription against cruel and unusual punishment prohibits "the unnecessary and wanton infliction of pain." *Hudson v. McMillan*, 503 U.S. 1, 5 (1992). "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Whenever prison officials use force to keep order, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore

discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7.

3. <u>Qualified immunity:</u> Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v.Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In making a qualified immunity determination, the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009).

## STATEMENT OF FACTS

Plaintiff Brandon Schiefel ("Schiefel") brings this civil rights action under 42 U.S.C. § 1983 as a *pro se* litigant who is a prisoner confined with the Michigan Department of Corrections ("MDOC").  Schiefel filed his complaint on December 22, 2022, alleging violation of his rights under the Eighth Amendment and MDOC Policy Directive 03.03.130.  (ECF No. 1, PageID.4.)  The alleged incidents took place at Carson City Correctional Facility ("DRF"), in Carson City, Michigan in March 2021. (*Id.*)  Schiefel initially filed suit against three MDOC Defendants, former Corrections Officer ("CO") Brandon Barton ("Barton"), an "Unknown Barber", and an "Unknown Houson," suing all defendants in their personal capacities only. (*Id*, at PageID.2.)  The only remaining Defendant is Barton. (ECF No 5, PageID.35.)

On or about December 8, 2020, Schiefel was involved in a fight with another inmate, Robert Taylor ("Taylor"), in the 500 unit of DRF. (Schiefel Dep., Ex. A, 15:24-16:16.)  After this fight, Schiefel remained in the 500 unit until February 2021, at which time Schiefel was moved to the 1200 Unit of DRF to enter protective custody. (*Id.*)  Schiefel remained in protective custody until March 4, 2021, at which time Schiefel left protective custody and, remained in the 1200 unit, where Barton was a regular Unit Officer. (*Id.* at 17:2-12.)

On March 24, 2021, Barton was on duty in the 1200 Unit of DRF when he received a call from the Control Center informing him that Taylor was being assigned to Cell 18 in the housing unit. (Barton Dec., Ex. B.)  Taylor came into the 1200 Unit, at which time Barton informed Taylor that he was being assigned to Cell

18. (*Id*.)  Taylor proceeded to Cell 18, however returned to the base, set his bag down, and informed Barton that this housing assignment would not work. (*Id*.)

Barton repeatedly inquired of Taylor why the assignment would not work, however Taylor did not elaborate and stating only that the assignment would not work without giving any reason as to why. (*Id*.)  Barton was forced to walk Taylor to Cell 18, order Taylor to enter the cell, as assigned, and Taylor complied with the order. (*Id*.)  Schiefel alleges that Barton threatened himself and Taylor with his Electronic Control Device ("ECD"), commonly known as a taser. (Schiefel Dep., Ex. A, 19:20-22.)  Barton denies this, and it would not have been necessary as Taylor had already entered the cell in compliance with Barton's order. (Barton Dec., Ex. B.) After which the door was secured with Schiefel and Taylor in the cell. (*Id*.)  Shortly after the door closed, one of the inmates began to press the emergency button, illuminating a light on the Officer Panel, and Officer Barton and Dill retuned to the cell side to speak to Taylor and Schiefel. (Schiefel Dep., Ex. A, 21:5-6.)

At the cell, both inmates began to assert that the assignment would not work. (*Id*., at 21:11-13.)   Barton and Dill attempted to gain more information as to why the assignment would not work, however gained very little information (Barton Dec. Ex. B; Dill Dec., Ex. F.)  Neither inmate stated there would be a fight, that they had previously fought each other, nor did the officers perceive the risk of a future fight. (*Id*.)  At most, Taylor stated that they had not gotten along in the past, however neither gave information sufficient for either Dill or Barton to perceive that there was a danger to either prisoner. (*Id*.)

2

Absent additional information, Barton did not discern there was any threat to either Schiefel or Taylor. (*Id.*)  Officer Dill told the inmates to wait a minute and stated he would call control center to see if there was a different bed for one of them.  (Barton Dec., Ex. B; Dill Dec., Ex. F.)  One of the inmates requested to see a sergeant, and Barton called the level IV sergeant, who responded that he would report to the unit. (Barton Dec., Ex. B.)  Believing that the issue would be handled with the sergeant, Barton left the cell side and returned to other duties and Dill proceeded to the Officer Panel to call the control center. (Barton Dec., Ex. B; Dill Dec., Ex. F.)

Schiefel asserts that he and Taylor began to fight immediately upon the officers leaving the cell. (Schiefel Dep., Ex. A., 21:23-25.)  While doing rounds and passing out mail, Barton heard abnormal sounds coming from cell 18. (Barton Dec., Ex. B.)  Barton quickly approached the cell to determine the source of the noises and saw through the window in the door that a fight was occurring inside. (Barton Dec., Ex. B; 1200 Unit A - Upper #2-2021-03-24, Ex. C, at 7:02:00.)  Barton immediately set the mail on the floor, called for assistance over the radio, and manually opened the door. (Barton Dec., Ex. B; 1200 Unit A - Upper #2-2021-03-24, Ex C, at 7:02:01.920-7:02:12.797.)  Upon opening the door, Barton saw Shiefel and Taylor fighting exchanging, blows with closed fists. (Barton Dec., Ex. B.)  Schiefel asserts that he was on the floor, with his back toward the door, with Taylor standing over him, striking him. (Schiefel Dep., Ex. A, 23:14-16.)  However, Barton

3

observed Schiefel to be on top of Taylor, which is confirmed by the video from

Barton's ECD. (Barton Dec., Ex. B; 1200_A_UpperTaser, Ex. D.)

A fight between prisoners is a dangerous situation that should be stopped as

soon as possible as it poses a risk to the prisoners involved, corrections officers, and

can stir up other prisoners. (Barton Dec., Ex. B.)  Stopping the fight between Taylor

and Schiefel was of pinnacle importance to prevent injury to either of them and

allow staff to render any necessary medical aid. (*Id*.)  Barton ordered Schiefel and

Taylor to stop fighting, however this went unheeded. (*Id*.)

Believing that it would be the fastest way to end the fight and fearing for

both his and the prisoners' safety Barton drew his ECD and announced "taser,

taser, taser" hoping that would stop the fight without deploying his ECD. (*Id*.)

However, Schiefel and Taylor continued to fight each other. (*Id*.)  Barton aimed his

ECD on the center of mass of Schiefel, as he was on top of prisoner Taylor, but as

Barton deployed his ECD, Shiefel jerked backwards, presumably to avoid the

prongs of the ECD. (*Id*.) As a result of this sudden dodge by Schiefel, one prong

struck Schiefel in the head, while the other missed him entirely and impacted

prisoner Taylor. (*Id*.)  This, none the less, brought the fight to an immediate end.

(*Id*.)

By this point, several other officers had arrived, and Schiefel and Taylor were

removed from the cell and escorted to segregation. (1200 Unit A Upper, Ex C, at

7:02:31.447-7:03:25.870.)  In segregation, Schiefel was examined by a nurse, who

removed the ECD probe but noted no other signs of trauma (Critical Incident Report, Ex. E, at 16.)

In accordance with the governing Case Management Order, Defendant Barton moves for summary judgment based on the arguments presented below and seeks full dismissal of the remaining claims against him.

## ARGUMENT

### I.    Legal standards for a motion for summary judgment.

Fed. R. Civ. P. 56(a) provides that a court "shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The main inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the evidence must be viewed in the light most favorable to the non-moving party, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  Thus, in order to survive summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250; Fed. R. Civ. P. 56(e).  To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings.  *Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 462 (6th Cir. 2019).  "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Alexander v. CareSource,* 576 F.3d 551, 560 (6th Cir. 2009).

## II.   Plaintiff's Eighth Amendment claims fail a matter of law and should be dismissed.

### A.   Schiefel cannot demonstrate that Barton had the requisite culpable state of mind for his Failure to Protect Claim.

Under the Eighth Amendment, prison officials have certain affirmative duties to "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)).  However, prison officials "may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.  As the Supreme Court noted in *Farmer*, it is not "every

6

injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.*, 511 U.S. at 834.

In the context of a failure to protect claim, an Eighth Amendment violation occurs only if two conditions are met; that the deprivation is objectively "sufficiently serious" and the "prison official must have a 'sufficiently culpable state of mind.'" *Id.* A plaintiff must show that defendants, through their own intentional and deliberate decisions and procedures, failed to protect plaintiff's personal safety. *See Roberts v. City of Troy*, 773 F.2d 720, 724 (6th Cir. 1985); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *Gilland v. Owens*, 718 F. Supp. 665, 687 (W.D. Tenn. 1989). To prove his claim, a plaintiff bears the burden of presenting sufficient evidence that the individual defendants were deliberately indifferent to a substantial risk of serious harm to the plaintiff and that they disregarded that risk. *Richko v. Wayne Cty.*, 819 F.3d 907, 915 (6th Cir. 2016). The subjective component requires a plaintiff to establish that (1) the official being sued subjectively perceived facts from which to infer a substantial risk to the prisoner, (2) the official did in fact draw the inference, and (3) the official then disregarded that risk. *Id.* (internal quotations omitted).

The risk posed to an inmate must be excessive or pose a substantial risk of serious harm and "[t]he known risk of injury must be 'a strong likelihood, rather than a mere possibility' before a guard's failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990). It is not

enough that a prison official has actual knowledge of facts that a reasonable person might infer a substantial risk to an inmate caused by their conduct, they "must actually have drawn the inference." *Rich v. Bruce*, 129 F.3d 336, 240 (4th Cir. 1997). Simple negligence or lack of due care is not sufficient to state an Eighth Amendment claim. *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986). Nor does an isolated or occasional attack rise to the level of deliberate indifference. *Stewart v. Love*, 696 F.2d 43 (6th Cir. 1982).

Schiefel cannot demonstrate that Barton acted with the requisite state of mind. While it is now apparent that Schiefel and Taylor had had a conflict in December of 2020, there is no evidence that Barton was aware of this prior conflict. As such, Taylor and Schiefel being assigned to the same cell in 1200 unit would not have inherently caused Barton to believe that either was in danger. Further, Barton was not involved and had no input in Taylor's assignment to that cell. (Barton Dec., Ex. B.) While Schiefel asserts that he and Taylor attempted to inform Barton of their belief that the cell assignment would cause a fight, by his own testimony, this was through a closed cell door, and it is unclear what Schiefel or Taylor actually said. (Schiefel Dep. Ex. A, 21:5-6.) What is clear, however is that neither Barton nor Dill perceived any risk of an imminent fight. Barton and Dill repeatedly attempted to find out what the problem was with this cell assignment. (Barton Dec., Ex. B; Dill Dec., Ex. F.) The most they were able to glean was that Taylor and Schiefel had not gotten along in the past and believed the assignment would not work. (*Id.*) Neither perceived any risk of an imminent danger. (*Id.*)

8

Even to the extent that it is believed a reasonable person would have perceived the risk based on the vague and cryptic statements by Taylor and Schiefel, it is apparent that Barton did not. (Barton Dec., Ex. B.)  Notably, neither did Dill. (Dill Dec., Ex. F.)  As such, Schiefel cannot show that that Barton actually drew the inference that Schiefel was in danger, as is required for his claim. *Rich,* 129 F.3d at 240.  At best, Schiefel's allegations are that Barton was informed that Schiefel and Taylor may fight at some point, not that there was an immediate and imminent threat to Schiefel.  However, the mere possibility of a fight at some point at some time in the future, is not sufficient to attribute liability.  *Brown*, 894 F.2d at 1537.

Further, Barton's actions do not demonstrate deliberate indifference, as he and Dill responded reasonably to the risk they perceived.  Barton was presented with two inmates stating their housing assignment would not work for unspecified reasons beyond the two not getting along. (Barton Dec., Ex. B; Dill Dec. Ex. F.)  As noted, Barton is not involved in cell assignments, and does not give any input into them. (Barton Dec., Ex. B.) It is therefore unclear what Schiefel or Taylor expected of Barton.

None the less, Barton, in conjunction with Dill, took reasonable steps to alleviate the unspecified risk presented by the cell assignment.  Dill told the inmates to wait so he could call control center for additional information and inquire about a different assignment for one of them. (Barton Dec., Ex. B; Dill Dec. Ex. F.)  Barton called and received confirmation that a sergeant would be reporting

to the unit to address the issue. (Barton Dec., Ex. B.)  Barton, therefore, believed the issue was well in hand and it would be addressed by a higher authority within the prison.  In simple terms, the wheels were in motion to address the issue, and Schiefel and Taylor refused to keep their respective hands to themselves.  Their impatience does not change the reasonableness of the response by Officer Barton. As such Barton should "be found free from liability [as he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Schiefel cannot demonstrate that Barton perceived a sufficiently substantial risk of serious harm to Schiefel, and therefore cannot establish that Barton acted with the requisite cuplable state of mind for his claim.  Further, Barton responded reasonably to the risk to Schiefel.  Barton should be granted Summary Judgement.

**B.    Schiefel cannot establish the objective or subjective components of his excessive force claim.**

The Eighth Amendment imparts a constitutional limitation on the power of the states to punish those convicted of a crime.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958).  The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346.  Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

"To make out a claim under the Eighth Amendment, an inmate must satisfy both an objective and a subjective component." *Williams v. Curtin*, 631 F.3d 380,

383 (6th Cir. 2011) (citing *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993)). "The subjective component focuses on the state of mind of the prison officials." *Id.*  In the excessive force context, "the relevant inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  When determining whether the subjective component is met, courts must consider the following factors: (1) the need for the application of force; (2) the relationship between such need and the force used; (3) the threat reasonably perceived by the prison official; and (4) any efforts undertaken to temper the severity of the response. *Id.* (citing *Hudson*, 503 U.S. at 7).

"The objective component requires the pain inflicted to be 'sufficiently serious.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  "This component requires a 'contextual' investigation, one that is 'responsive to contemporary standards of decency.'" *Cordell v. McKinney*, 759 F.3d 573, 580-81 (6th Cir. 2014) (quoting *Hudson*, 503 U.S. at 8).  "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Id.* at 580-81 (citing *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)).  "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Id.* at 581 (quoting *Hudson*, 503 U.S. at 9).

In this case, Schiefel cannot satisfy either the objective or subjective component of an Eighth Amendment excessive force claim.  Ultimately, Barton used only the

minimum force necessary to stop a fight between two inmates and applied such force in a good faith effort to restore order and discipline to the facility and prevent further injury.

Schiefel cannot establish that Barton acted with the requisite state of mind to meet the subjective component. The evidence shows that Barton was the first officer to respond to an ongoing fight between two prisoners. (Barton Dec., Ex. B; 1200 Unit A - Upper #2-2021-03-24, Ex. C.) Barton immediately acted to end the fight as quickly as possible, by ordering them to stop fighting. (Barton Dec. Ex. B.) However, neither Schiefel nor Taylor obeyed this order. (*Id.*) Barton, again, attempted to intervene short of using force by announcing "taser, taser, taser" however this was similarly unsuccessful. (*Id.*)

A fight between prisoners is a dangerous situation that should be stopped as soon as possible. (*Id.*) The fight must be stopped to prevent the prisoners from severely injuring each other and, in the event of injury, render medical aid. (*Id.*) Fights also create a disturbance that not only stir up other prisoners but take unit CO's attention away from the numerous other prisoners in the unit, creating the possibility for other hazards. (*Id.*) Barton deployed his ECD at prisoner Schiefel to stop the fight, restore discipline to the unit, and ensure that the prisoners received any needed medical attention. (*Id.*).

Schiefel asserts that Barton had no reason to use force against him as Schiefel was "on the ground with his hands protecting his face." (ECF No.1, PageID.4.) This is not what Barton encountered when opening the door to Schiefel and Taylor's cell.

12

What Barton found was Schiefel on top of Taylor, each striking the other. (Barton Dec., Ex. B.)  Further, the ECD video confirms that Schiefel was on top of Taylor, and not Taylor standing over Schiefel. (1200_A_UpperTaser, Ex. D.)  As Schiefel's assertion is contradicted by the video evidence and Barton's is confirmed, Schiefel's claim should not be adopted.  *Scott v. Harris*, 550 U.S. 327, 380 (2007).

Schiefel makes much of the fact that one of the prongs of the ECD hit him in the head claiming that Barton aimed for his head, however Barton did not aim for Schiefel's head. (Barton Dec., Ex. B.)  Barton drew his ECD and aimed it at Schiefel's back, because Schiefel was on top of Taylor.  (*Id*.)  Barton was acting in accordance with his training, and aiming at Schiefel's center of mass, however Scheifel ducked as Barton discharged his ECD. (*Id*.) Scheifel's actions, not Barton's, are the cause of the prong impacting Schiefel's head.

Furthermore, neither does the fact that Schiefel asserts he was the victim of an assault change the analysis.  Barton came upon this altercation as it was already in progress, and his job was to restore order and prevent further harm.  (Barton Dec., Ex. B.)  In *Guile v. Spence*, 2022 WL 658711 (W.D. Mich. 2022), the Western District reviewed a similar situation in which a prisoner plaintiff was "tased immediately following an unprovoked attack."  *Id*. at * 4.  In granting summary judgment in favor of the defendant, the Court observed that, while it "was obviously a very bad day for (the plaintiff)… evaluating Defendants' conduct in hindsight, with the knowledge that (plaintiff) was the victim of an attack rather than an aggressor, would be 'the very sort of after-the-fact second-guessing that the Supreme Court has instructed courts to avoid.'"  *Id*., citing *Graham v. Turner*, No.

13

1:16-CV-149, 2019 WL 5273760, at *5 (W.D. Mich. Aug. 19, 2019.)  And, as here, the "video of the incident, paired with the Defendants affidavits, shows that COs () were attempting to restore order...".  *Id*.

Like the COs in *Guile*, Barton acted quickly and reasonably to end a dangerous altercation.  Unlike *Guile*, Schiefel makes no claim that the altercation was over by the time Barton deployed his ECD or that Barton had any pre-existing animus toward Schiefel; which were factors that the magistrate judge considered, and rejected, in *Guile*.  *Id*. at *3.  In the case at bar, there is no dispute that the altercation between prisoners was ongoing and no evidence that Barton acted with animus or maliciously and sadistically to cause harm.  Schiefel's Eighth Amendment claim fails on the subjective component and Barton respectfully requests that this Court grant summary judgment in his favor.

For the same reasons discussed above, Schiefel cannot establish the objective component of an excessive force claim.  Barton ultimately used the minimum force necessary and only used physical force after initially attempting to intervene verbally without using his ECD.  It was only at the point at which Barton had already attempted to verbally intervene twice that Barton was forced to, and did, use his ECD.  The amount of force that was used was the minimum needed to gain control of prisoners who were actively fighting and who refused to comply with verbal commands.  Thus, the use of the ECD was necessary to regain control of the prisoners, end the fight, and restore order within the unit, which are all valid penological interests.

14

While Schiefel claims that the use of the ECD has resulted in lingering effects, it is noteworthy that the medical professionals examining Schiefel immediately after did not find any signs of obvious trauma. (Critical Incident Report, Ex. E, at 16.)  Further, as noted in *Guile*, "[t]he objective component [of an excessive force claim] requires that the use of force be more than de minimis." *Guile*, 2022 WL 658711 at *4, citing *Alexander v. Ojala*, No. 17-2357, 2018 WL 5905588, at *3 (6th Cir. May 29, 2018) (finding that the use of a taser to stop an altercation, which resulted in pain, muscle cramps, and difficulty sleeping, was de minimis despite plaintiff's assertion that he had stopped actively fighting when he was tased). Given the circumstances, Barton's deployment of his ECD did not amount to more than a de minimis use of force.

Based on the foregoing, Schiefel cannot prove either the subjective or objective component of his Eighth Amendment claim.  As a result, the claim is fundamentally flawed, and Defendant Barton should be granted summary judgment.

## III.    Plaintiff's alleged state law claim for violation of MDOC PD 03.03.130 fails to state a claim and should be dismissed.

Schiefel alleges, in a general sense, that Bartons actions violate MDOC PD 03.03.130 as an independent state-law action over which the Court retained supplemental jurisdiction.  Schiefel's claim based on an alleged PD 03.03.130 fails to state a claim and must be dismissed.  Schiefel's claim under this policy directive does not sound in common law, nor is it a recognized statutory claim, as indeed MDOC Policy Directives are not statues, but rules authorized by MCL 791.206(D), which does not explicitly create a cause of action.  Further, the mere existence of a

15

MDOC PD does not, by itself create cause of action. *Martin v. Stine*, 214 Mich. App.
403, 417 (1995).

As the Court noted in its screening opinion, courts have routinely recognized
that a prisoner does not enjoy any federal case protected liberty or property interest
in state procedure. (ECF No.5, PageID.5-6.)  On this basis, Schiefel's claim
predicated on a violation of PD 03.03.130 therefore fails to raise a cognizable federal
constitutional claim. (*Id*., at PageID.6.)  However, under *Martin*, this reasoning
equally applies to any alleged state law claim.  In *Martin*, the Michigan Court of
Appeals adopted the reasoning of the United States Supreme Court's opinion in
*Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293 (1995), "reject[ing] an approach that
bases a finding of a liberty interest on a negative inference of a prison regulation.
*Martin*, 214 Mich. App. at 417.  Therefore, as Schiefel's alleged violation of MDOC
policy fails to set forth a cognizable federal claim, it fails to set forth a cognizable
state law claim. As Plaintiff's claim under MDOC PD 03.03.130 is not a recognized
cause of action, it fails to state a claim and must be dismissed.

**IV.    Defendant is entitled to qualified immunity as Defendant did not
    commit a constitutional violation against the Plaintiff.**

The United States Supreme Court held that governmental officials or
employees who are sued in their individual capacities "are shielded from liability for
civil damages insofar as their conduct does not violate clearly established statutory
or constitutional rights of which a reasonable person would have known."  *Harlow v.
Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is "an entitlement not to
stand trial or face the other burdens of litigation" and is "an immunity from suit

16

rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001).

In *Saucier*, the Supreme Court used a two-prong test.  A court's first inquiry, taken in the light most favorable to the party claiming the injury, is whether the facts alleged show the officer's conduct violated a constitutional right.  *Saucier*, 533 U.S. at 201.  If a violation could be made out on a favorable view of the parties' submissions, the next, sequential step "is to ask whether the right was clearly established" and "this inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Id.*  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation that he confronted."  *Id.*

The Supreme Court later modified *Saucier* in *Pearson v. Callahan*, 555 U.S. 223 (2009).  In *Pearson*, the Court held that the two-step *Saucier* analysis is not mandatory.  *Id.*  Instead, courts have the discretion to decide whether, under the facts of the case before them, there is a violation of a constitutional right or first go to the *Saucier* second prong and decide whether the defendant's actions violated clearly established law.  *Id.*  Lower courts "are in the best position to determine the order of decision making [that] will best facilitate the fair and efficient disposition of each case."  *Id.* at 236.

As discussed, above, Schiefel's Eighth Amendment rights were not violated by Barton as he cannot demonstrate that Barton acted with the requisite subjective

intent for his deliberate indifference claim, and Barton responded reasonably to the risks of which he was aware.  Additionally, Barton did not use excessive force, but rather used the minimum force necessary to bring an end to a dangerous fight between prisoners and did not use force with the intent to injure or punish Scheifel. Schiefel cannot establish that his constitutional rights were violated.

As to Schiefel's claim based in MDOC 03.03.130, alleged violations of MDOC policy do not rise to the level of a violation or deprivation of a federal constitutional right cognizable under Section 1983. *See Grinter v. Knight*, 532 F.3d 567, 574 (6th Cir. 2008) (ruling that "failing to follow proper procedures is insufficient to establish an infringement of a liberty interest" and citing *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983)); *McVeigh v. Bartlett*, No. 94-2347, 1995 WL 236687, *1 (6th Cir. April 21, 1995) (failure to follow MDOC Policy Directive does not rise to the level of a constitutional violation because the Directive does not create a liberty interest protected by the Fourteenth Amendment's Due Process Clause).

Failure to follow prison administrative policies or state law does not abrogate Barton' qualified immunity because the inquiry is whether the official has violated the Constitution.  *Flick v. Larue*, 608 F. Supp. 1281, 1283 (E.D. Mich. 1985) (citing *Davis v. Scherer,* 468 U.S. 183, 194 (1984)). Even if Barton did not act in accordance with MDOC policy or state law, qualified immunity still applies.  *Hyman v. Lewis*, 27 F.4th 1233, 1238 (6th Cir. 2022) (finding that MDOC officer's failure to follow MDOC operating procedure did not rise to the level of a constitutional violation); *Boswell v. Mayer*, 169 F.3d 384, 390 (6th Cir. 1999). To the extent that defendants

suffered a lapse of judgment, they are still entitled to qualified immunity.  *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).  As such, Barton is entitled to qualified immunity and should be granted summary judgment.

## CONCLUSION

Schiefel cannot put forth evidence from which a jury could reasonably find for him as is required to impose liability under 42 U.S.C. § 1983.  Defendant Barton respectfully requests this Honorable Court grant his motion for summary judgment and dismiss all claims against him with prejudice.

Respectfully submitted,

*/s/ James Keathley*
James Keathley (P77488)
Michigan Dep't of Attorney General
Assistant Attorney General
Attorney for Defendant
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
Keathleyj@michigan.gov

Dated: September 26, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to counsel and placed same in U.S. mail to the following non-ECF participant:

Brandon Schiefel #495212
Bellamy Creek Correctional Facility
1727 W Bluewater Hwy
Ionia, MI 48846                                  */s/James Keathley*
                                                 James Keathley (P77488)
                                                 Assistant Attorney General
                                                 Attorney for MDOC Defendant

19