# Defendant's Exhibit B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

BRANDON SCHIEFEL #495212,

    Plaintiff,

v

C/O EVAN BARTON, *et al.*,

    Defendants.

NO. 1:22-cv-1216

MAG. PHILLIP J. GREEN

---

| | |
|---|---|
| Brandon Schiefel #495212<br>*In Pro Per*<br>Carson City Correctional Facility<br>10274 Boyer Road<br>Carson City, MI 48811-9746 | James E. Keathley (P77488)<br>Assistant Attorney General<br>Attorney for MDOC Defendant Barton<br>Michigan Dept of Attorney General<br>Corrections Division<br>P.O. Box 30217<br>Lansing, MI 48909<br>(517) 335-3055 |

/

## **DECLARATION OF EVAN BARTON**

I, Evan Barton, declare as follows:

1. I am a former employee of the Michigan Department of Corrections (MDOC).

2. At the times relevant to this matter, I was employed by the MDOC as a Corrections Officer at the Carson City Correctional Facility (DRF), in Carson City, Michigan.

3. If sworn as a witness, I can testify competently to the facts contained within this Declaration.

4. I am familiar with the allegations made by Prisoner Brandon Schiefel in his complaint in this matter.

5. I was working at DRF on March 24, 2021 in 1200 unit.

6. On that date, I received a call from the Control Center, informing me that Prisoner Robert Taylor #799443 was being assigned to Cell 18 in the housing unit.

7. As a Corrections Officer, I was not involved in assigning prisoners to their cells and had no input in their cell assignment.

8. Taylor came into the unit and I informed him he was going to Cell 18.

9. Taylor proceeded to Cell 18, however returned to the base where I was, set his bag down, and informed me that this housing assignment would not work.

10. I repeatedly inquired of Taylor why the assignment would not work, however Taylor did not elaborate and stating only that the assignment would not work without giving any reason as to why.

11. I walked Taylor down to the cell and ordered Taylor to enter the cell, as assigned, and Taylor complied with the order.

12. I did not threaten Taylor with my Electronic Control Device (ECD), also referred to as a "taser".

13. Almost immediately after closing the door, the emergency light for cell 18 began to go off, indicating one of the prisoners was pressing the emergency button inside the cell.

14. Corrections Officer John Dill and I responded to Cell 18, where Schiefel and Taylor were assigned.

15. Taylor reiterated that the assignment would not work, but despite repeated requests, neither Schiefel would elaborate as to why this assignment was inappropriate.

16. I took the inmates seriously, and tried to find out why they believed the cell assignment was inappropriate.

17. The most detail that I or Dill received was Taylor stating that he and Schiefel had not gotten along in the past.

18. Neither inmate stated to me that the assignment would result in a fight.

19. Neither inmate appeared to be preparing to fight nor did either state that a fight was imminent.

20. I did not perceive that a fight was likely to occur.

21. At no point did I laugh at the prisoners, nor did I state "it looks like it's working if you ain't fighting" as I would not state this nor was I informed of the risk of a fight between Taylor and Schiefel.

22. Without further elaboration, I did not have information sufficient to discern there was any imminent threat to either Schiefel or Taylor, as neither stated that he was in danger or that a fight was imminent.

23. Officer Dill told Schiefel and Taylor to wait a minute and that he was was going to make a call to Control Center to see if there was a problem and to see if there was an open bed to move one of them to.

24. Taylor requested to see a sergeant and I called the level IV sergeant, who responded that he would report to the unit.

25. Without more specific information from Taylor or Schiefel about the issue with the assignment and believing that the issue would be handled with the sergeant, Officer Dill and I left the cell side, Officer Dill proceeding to the Officer Panel to call the Control Center and I began performing my regular duties.

26. Within minutes, as I was doing rounds and passing out mail within the unit, I heard abnormal sounds coming from cell 18.

27. I quickly approached the cell to determine the source of the noises, and saw through the window in the door that a fight was occurring inside.

28. I immediately the down mail and called for assistance over my radio and used my key to manually open the door.

29. When I got the door opened, I could see that Shiefel and Taylor were fighting exchanging blows with closed fists, and Shiefel was on top of Taylor.

30. In a loud voice, I ordered Shiefel and Taylor to stop fighting, however they continued to struggle with each other.

31. A fight between prisoners is a dangerous situation that should be stopped as soon as possible as it poses a risk to the prisoners involved, corrections officers, and can stir up other prisoners.

32. Stopping the fight between Taylor and Schiefel was of pinnacle importance to prevent injury to either of them and allow staff to render any necessary medical aid.

33. Believing that it would be the fastest way to end the fight and fearing for both my and the prisoners' safety I drew my ECD and announced

"taser, taser, taser" in an attempt to stop the fight, but Shiefel and Taylor did not stop.

34. In accordance with my training, I aimed my ECD at the center of mass on Schiefel as he was on top of prisoner Taylor.

35. As I deployed my ECD, Shiefel jerked backwards, presumably to avoid the prongs of the ECD, resulting one prong striking him in the back of the head, and the other missing him entirely and striking prisoner Taylor.

36. I did not intentionally discharge my ECD at Schiefel's head, and had he not jerked backwards, both prongs would have struck him in the torso.

37. One ECD prong in each prisoner was sufficient to close the circuit, enabling both to feel the effects of the ECD, and bringing the fight to an immediate end.

38. I did not have any intention to harm or punish Schiefel, my only intent was to bring the fight to an end as soon as possible to avoid injury to either prisoner.

39. Force was used only to the extent I believed necessary to enforce MDOC policies and maintain order and control within the facility, in defense of others, and defense of self.

40. At all times I acted in good faith, within the scope of my authority, and in accordance with my understanding of the statutes, rules and policies governing the Michigan Department of Corrections.

Pursuant to 28 U.S.C § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on 9/21/2024.

Evan Barton