UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDON LEE SCHIEFEL,

    Plaintiff,                                  Hon. Hala Y. Jarbou

v.                                              Case No. 1:22-cv-1216

UNKNOWN BARTON, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Unknown Barton's Motion for Summary Judgment. (ECF No. 24). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be granted in part and denied in part.

## BACKGROUND

Plaintiff's claims arise from a series of events occurring at the Carson City Correctional Facility (DRF). On December 8, 2020, Plaintiff was involved in a physical altercation with another inmate, Robert Taylor, in the 500 unit of DRF. Despite the incident, Plaintiff remained in the same housing unit until he was transferred to protective custody in the 1200 unit of DRF in February 2021. On March 4, 2021, Plaintiff voluntarily left protective custody but remained in cell 18 of the 1200 unit.

On March 24, 2021, Defendant Barton was on duty in the 1200 unit when the control center informed him that Taylor was being assigned to cell 18. It is undisputed that Defendant Barton initially did not know about the prior incident

between Plaintiff and Taylor. Taylor entered the 1200 unit and proceeded to walk to cell 18 with his bag. When he noticed Plaintiff, Taylor immediately stopped walking and returned to Defendant Barton to explain that the housing assignment would not work. Defendant Barton then walked Taylor back to cell 18 and ordered him to enter. Taylor complied. Once Taylor and Plaintiff were in the cell, they both tried to tell Defendant Barton and another corrections officer that the housing assignment would not work. According to Defendant Barton, he repeatedly inquired into why the housing assignment would not work, but neither individual elaborated. According to Plaintiff, Defendant Barton was told about the previous fight and that there was a high likelihood of another physical altercation occurring. The other corrections officer told Plaintiff and Taylor to wait a minute and stated that he would call the control center to see if there was a different bed for one of them. Defendant Barton decided to call the sergeant, who responded that he would report to the unit. Defendant Barton and the other officer then left the cell side.

After the officers left, Plaintiff and Taylor almost immediately started fighting. Defendant Barton heard abnormal sounds coming from cell 18 and quickly approached the cell. After he saw Taylor and Plaintiff fighting, Defendant Barton called for assistance, opened the door, and ordered them to stop fighting. Plaintiff and Taylor continued to fight, and Defendant Barton pulled his Electronic Control Device (ECD) and yelled "taser." Because the fight continued, Defendant Barton deployed his ECD. One probe struck Plaintiff in the head, and the other probe struck Taylor. The use of the ECD stopped the fight and other officers arrived at the cell to

escort Plaintiff and Taylor to segregation. In segregation, Plaintiff was examined by a nurse who removed the ECD probe and noted no other signs of trauma.

Based on these events, Plaintiff asserts Eighth Amendment failure to protect and excessive force claims, as well as state law claims, against Defendant Barton. Defendant Barton now moves for summary judgment and argues that he is entitled to qualified immunity.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case." *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735. Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 993 F.3d 465 at 474.

## ANALYSIS

### I. Failure to Protect

Plaintiff asserts a failure to protect Eighth Amendment claim against Defendant Barton. The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates" and "to protect prisoners from violence at the

hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citations omitted). A failure to protect claim under the Eighth Amendment requires the plaintiff to establish that the defendant was deliberately indifferent to "a substantial risk" that he might suffer "serious harm." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 828). To establish that a defendant acted with deliberate indifference, the plaintiff must demonstrate that he was "subjectively aware of the risk," but failed "to take reasonable measures to abate it.'" *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 829, 847).

To prevail on the specific claim that Defendant Barton failed to protect him from an assault by Taylor, Plaintiff must establish: (1) Defendant had reason to believe Plaintiff would be assaulted by Taylor, and (2) Defendant had both the opportunity and means to prevent the assault. *See, e.g., Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013). Furthermore, that a prison official may have acted negligently is insufficient to establish a violation of the Eighth Amendment. *See, e.g., Farmer*, 511 U.S. at 835 (to prevail on an Eighth Amendment claim, the plaintiff must establish that the defendant acted with a "state of mind more blameworthy than negligence").

Defendant argues that Plaintiff cannot demonstrate that he had the requisite culpable state of mind for the failure to protect claim. He contends that there is no evidence that he knew of the December 2020 altercation between Plaintiff and Taylor and that he only received vague and cryptic statements about how the two inmates could not house together. He further contends that even though he did not perceive

-5-

any risk of danger, he took reasonable steps to alleviate any risk by ensuring that the sergeant would report to the cell. As stated by Defendant, "[i]n simple terms, the wheels were in motion to address the issue, and [Plaintiff] and Taylor refused to keep their respective hands to themselves. Their impatience does not change the reasonableness of the response by [Defendant] Barton." (ECF No. 25 at PageID.89).

Defendant's argument goes too far. Although he claims that he only received vague and cryptic responses when inquiring about any potential danger, Plaintiff has presented affidavits establishing that Defendant was told about the previous fight and that both inmates were concerned about their immediate safety. (ECF No. 29-3 at PageID.221; 29-4 at PageID.225; 29-5 at PageID.228). Notably, Defendant Barton allegedly responded to Plaintiff's housing concerns by saying, "[i]t looks like it's working to me if you aren't fighting." (ECF No. 29-3 at PageID.222). While it is true that Defendant took some action to abate the risk of harm by calling the sergeant, a trier of fact could conclude that leaving the cell given the circumstances before the sergeant arrived constituted deliberate indifference. Accordingly, in the opinion of the undersigned, whether Defendant was deliberately indifferent to a substantial risk that Plaintiff might suffer serious harm is a question of fact for the jury to decide.

Defendants further argue that they are entitled to qualified immunity on Plaintiff's claim. The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory

or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed her conduct was lawful. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation and whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either prong of the inquiry without regard to sequence. *Id.* at 236. As discussed above, an issue of fact remains as to whether Defendants were deliberately indifferent to a serious risk of harm to Plaintiff. Under *Farmer*, it is clearly established that prison officials violate the Eighth Amendment when they are deliberately indifferent to a threat of violence by one inmate against another. *See Bishop v. Hackel*, 636 F.3d 757, 765-66 (6th Cir. 2011). Accordingly, Defendant is not entitled to qualified immunity on Plaintiff's failure to protect claim.

## II. Excessive Force

Plaintiff also asserts an excessive force Eighth Amendment claim against Defendant Barton. The Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton

-7-

infliction of pain." *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia,* 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson,* 800 F.2d 600, 604 (6th Cir. 1986). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney,* 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson,* 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin,* 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers,* 43 F.3d 1034, 1037 (6th Cir. 1995)).

There is an objective component and a subjective component to an excessive force Eighth Amendment claim. *Santiago v. Ringle,* 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams,* 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams,* 631 F.3d at 383 (quoting *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of

-8-

physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson,* 503 U.S. at 9-10 (quoting *Whitley v. Albers,* 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Here, Defendant Barton states that he deployed his ECD in an attempt to stop the fight as quickly as possible. (ECF No. 25-3 at PageID.118-119). He states that "[a] fight between prisoners is a dangerous situation that should be stopped as soon as possible as it poses a risk to the prisoners involved, corrections officers, and can stir up other prisoners." (*Id.* at PageID.118). Defendant Barton resorted to this use of force only after Plaintiff and Taylor refused to comply with his oral commands and continued to fight. (*Id.*) Although Plaintiff claims in his response brief that Defendant Barton did not say anything (ECF No. 29 at PageID.193), he admitted at his deposition that he could not hear anything because he was being punched and "not paying attention to what's going on behind [him]" (ECF No. 25-2 at PageID.111).

Defendant Barton's statements are supported by video evidence. In the first video of the 1200 unit, Defendant Barton is seen responding to the cell, presumably

because he heard abnormal sounds coming from it. (ECF No. 25-4). As soon as he gets to the cell, he radios for assistance, opens the cell door, pulls his ECD, pauses for a second, and then deploys the ECD. Defendant Barton had the fight stopped within 30 seconds of arriving at the cell. The second video, which came from the ECD device, shows the aftermath of the situation as both Plaintiff and Taylor are on the ground with their clothes torn. Neither video depicts any obvious physical injuries, and Plaintiff was subsequently seen by a registered nurse who did not observe any significant trauma. (ECF No. 25-6 at PageID.139-140).

Plaintiff argues that he was the victim of the assault and that Defendant Barton maliciously and sadistically deployed the ECD intending to hit the victim. However, Defendant Barton acted quickly in an urgent situation. Even accepting Plaintiff's claim that he was the victim of the fight, Defendant Barton's conduct cannot be evaluated in hindsight. *See Guile v. Spence*, No. 2:19-CV-138, 2022 WL 658711, at *4 (W.D. Mich. Feb. 4, 2022), R&R approved No. 2:19-CV-138, 2022 WL 656653 (W.D. Mich. Mar. 4, 2022) ("[E]valuating Defendants' conduct in hindsight, with the knowledge that [the plaintiff] was the victim of an attack rather than an aggressor, would be 'the very sort of after-the-fact second-guessing that the Supreme Court has instructed courts to avoid.'") (citation omitted). The video depicts Defendant Barton deploying his ECD in a good-faith effort to stop the fight and restore order. Accordingly, the undersigned recommends that Defendant Barton is entitled to summary judgment on Plaintiff's excessive force claim.

## III. State Law Claims

Finally, Plaintiff asserts claims based on Defendant Barton's alleged violations of MDOC Policy Directive 03.03.130. At screening, the Court determined that violations of MDOC Policy Directive 03.03.130 fail to state a federal claim because a prisoner does not enjoy any federal protected liberty or property interest in state procedure. (ECF No. 5 at PageID.34). The Court, however, exercised supplemental jurisdiction over Plaintiff's state law claims based on the same policy violations. (*Id.*)

Defendant now argues that the Court should dismiss the state law claims because there is no state protected liberty or property interest in the state procedure. The undersigned agrees. *See Martin v. Stine*, 214 Mich. App. 403, 417 (1995). Furthermore, Plaintiff has failed to respond to Defendant's argument, and the failure to respond to an argument that a claim is subject to dismissal "amounts to a forfeiture of [such] claim". *See Notredan, L.L.C. v. Old Republic Exchange Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. July 29, 2013). Accordingly, the undersigned recommends that Plaintiff's motion be granted with regard to the state law claims and that those claims be dismissed.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendant's motion (ECF No. 24) be granted in part and denied in part. Specifically, the undersigned recommends that the Court grant Defendant's motion for summary

judgment with regard to the excessive force and state law claims. If this recommendation is adopted, the case will proceed on the failure to protect claim.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Date: August 13, 2025 /s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge